# Hartman v. Western Maryland Railway Company, Appellant.

*Negligence—Railroads—Operation of freight train—Weight of evidence—Corroborating facts—Act of Congress of April 22, 1908, Chap. 149, 35 U. S. Stat. 65—Case for jury—Instructions to jury —Assumption of risk.*

. 1. In an action by a brakeman against his employer, a railroad company, to recover damages for personal injuries, brought under the Act of Congress of April 22, 1908, Chap. 149, 35 U. S. Stat. 65, making common carriers engaged in interstate commerce liable in damages to any employee injured, inter alia, by the negligence of another employee of such carrier, it·appeared that plaintiff was injured while crossing over the top of box cars of a freight train upon which he was employed. He testified that his fall was due to unusual and violent jerks of the train caused by a speed in excess of twenty-five miles an hour, in violation of a rule of defendant company, and the negligence of the engineer in suddenly and repeatedly applying the brakes. No other witnesses testified to the excessive speed of the train, but four witnesses for the defendant testified that the speed was not in excess of nine miles an hour. It appeared that the average speed of the train for its entire route was sixteen and one-fourth miles an hour, and that the accident happened at the foot of a down grade on a short curve, just at the beginning of an up-grade, and at the end of a stretch of straight track nearly two thousand feet long. The plaintiff's evidence as to the violent jerks of the train was also contradicted. *Held,* the weight of the evidence was not so clearly against the plaintiff that the court could withdraw the case from the jury, and a verdict and judgment for plaintiff was sustained.

2. In such case the alleged failure of the court to instruct the jury as to the weight to be given to the uncorroborated testimony of the plaintiff, in view of its contradiction by defendant's witnesses, is not ground for reversal where the matter was correctly dealt with in the court's charge and no fuller instructions were requested by the defendant.

3. In such case it could not be held as a matter of law that plaintiff had assumed the risk of the injury from which he suffered, and it was not error for the court to submit the question to the jury with instruction that plaintiff had "assumed all the obvious and open risks of his employment in the ordinary operation of the train on which he worked as brakeman, and also of such risks as

to which he had been informed. Among such risks of injury should be those ordinarily and obviously existing where a brakeman in the discharge of his usual duties as such is required to walk over the tops of moving cars."

Argued May 19, 1914. Appeal, No. 171, Jan. T., 1914, by defendant, from judgment of C. P., York Co., Aug. T., 1913, No. 109, on verdict for plaintiff, in case of Ivan R. Hartman v. Western Maryland Railway Company. Before FELL, C. J., BROWN, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass for personal injuries. WANNER, P. J., filed the following opinion:

The plaintiff having secured a verdict for damages for personal injuries, motions for a new trial, and for judgment non obstante veredicto, have been filed by the defendant in this case. The plaintiff's only ground of recovery was the alleged negligence of the engineer of the defendant's train:

(1) In running at a rate of speed which was dangerous, and in excess of the maximum safe rate, fixed by the rules of the defendant company itself.

(2) In negligently applying the brakes on the engine, thereby causing excessive and unusual jolting and swaying of the cars, which threw the plaintiff off, and injured him.

The proof of defendant's negligence practically rested upon the testimony of the plaintiff alone, who was a brakeman in its employ. He was contradicted by two engineers, one fireman, and another brakeman, who were on the same train at the time of the accident, as to the most material facts of the case.

The average rate of speed maintained on that trip, according to the train record, was sixteen and one-fourth miles per hour. The maximum rate at which the rules of the company permit freight trains to be run, was twenty miles per hour, and employees were instruct-

ed that a higher rate was unsafe. This train contained thirty-one cars loaded with seventeen hundred tons of freight, and was drawn by two locomotive engines.

A new trial is asked for mainly because the verdict for the plaintiff was against the weight of the evidence, on the subject of the defendant's negligence, and because the court refused binding instructions for the defendant. The other reasons were not pressed at the argument.

The plaintiff testified that the accident happened at the foot of a down grade, on a short curve just at the beginning of an up grade, while the train was running at the rate of from twenty-five to thirty miles per hour. He alleges that he was thrown off the top of a swaying car, by a series of violent and unusual jolts and jerks resulting from sudden and repeated application of the brakes by the engineer.

The defendant's four trainmen fixed the speed of the train at eight miles per hour, though the fireman admitted his inability to properly judge the rate of speed. The other three were positive however, and were employees of longer experience than the plaintiff himself, in train work. If the weight of the evidence depended solely upon the number of witnesses testifying to the rate of speed, with no reference to other collateral facts and circumstances, this testimony would be very strongly against the plaintiff. But there are certain significant facts in the case, throwing light on the rate of speed that a heavily loaded train of cars like this, would probably have attained at the place of this accident. There was a stretch of straight track nearly two thousand feet long, down which it appears that the train ran, to the curve at the foot of it, where the accident occurred. Under ordinary running conditions the speed of a train, under such circumstances, would naturally be much accelerated, so that this one would most probably have attained a rate above its average speed of sixteen and one-fourth miles per hour. Yet the trainmen estimated

its speed at the time of the accident, at only half the
average rate per hour, at which the train record shows
that it had actually travelled during the entire trip.
One of the men even fixed the rate as low as six miles
per hour. This would seem to be quite improbable, and
the jury may have for that reason, found the fact against
the defendant's witnesses.

Under such circumstances, it was clearly for the jury
to determine the credibility of the witnesses, and the
weight to be given to their testimony and the court can-
not reverse its finding. The plaintiff was a much in-
terested party. All the other witnesses as to speed and
the application of the brakes, were employees of the
defendant, and possibly influenced by that fact. There
was some contradictory evidence as to where the up-
grade began. Some of the defendant's witnesses placed
it farther west than the point fixed by the plaintiff. The
civil engineer of the road fixes the up-grade at about one
foot per mile going eastward at the point where the ac-
cident occurred. These differences in the testimony as
to the actual grade, and as to the speed of the train at
the time of the accident, were necessarily submitted to
the jury at the trial.

The brakeman, Bowman, who was on the same car
with the plaintiff at the time of the accident, denies that
there were unusual or violent jerks, jolts, and swayings
of the car when the plaintiff fell off. But the officer
who subpœnaed the brakeman as a witness, testified
that in telling how the accident happened, the latter
said that the motion of the car was so violent, that he
could keep his own feet with difficulty, at the time of
the accident. The officer's statement as to this was de-
nied by the witness, and by his wife, who claimed to
have been present when the subpœna was served upon
her husband.

It was also testified by one witness that the plaintiff
had told him some time after the accident, that he was
blinded by the bright light from the open furnace door

of the engine, when he fell off the car.  This was denied by the plaintiff, at the trial of the case.

The proper determination of these and other conflicts of testimony, depends so much upon the credibility of the several witnesses concerned therein, that the case is peculiarly one of the kind in which the law makes the jury the final arbiter.

Where the decision is less dependent upon the credibility of the witnesses, and is more a matter of determining the relative weight and value of clearly proven facts, the court may be able to judge whether or not the testimony has been given due weight by the jury. Under such circumstances, where it is manifest that the jury has overlooked, or disregarded the weight of the admitted or clearly established facts of the case, it may become the duty of the court to set aside such a perverse verdict, and to grant a new trial.  But it can never be properly done except in a clear case.

This is not a case of that kind, because of the uncertainty and the inherent improbability of some of the testimony, and because the credibility of certain witnesses is called into question, not only by their verbal contradiction of each other, but by the inferences that may be drawn from some of the undisputed facts of the case.  The court cannot, under such circumstances set up its own individual judgment against the findings of the jury as to the weight of the evidence, and the credibility of the witnesses, nor can it arbitrarily adopt the testimony of a majority of the witnesses as conclusive: Kitler v. People's St. Ry. Co., 27 Pa. Superior Ct. 602; Sanson v. Philadelphia R. T. Co., 239 Pa. 505; Howett v. Philadelphia W. & B. R. R. Co., 166 Pa. 607; Bain v. Petroleum Iron Works, 226 Pa. 414; Bartholomew v. Kemmerer, 211 Pa. 277; Becker v. Traction Co., 52 Pa. Superior Ct. 93; Cromley v. Pa. R. R. Co., 211 Pa. 429.

The same observations apply to the conflicting testimony of the several witnesses as to whether or not there

were, at the time of the accident, such violent and unusual jolts and jerks of the car as the plaintiff testified had caused the accident to himself.

Under all the circumstances of this case, whatever our own judgment might be as to the weight of the testimony on certain questions of fact, we are not prepared to say that the conclusions of this jury are so manifestly wrong, or showed such a disregard of their plain duty, or of the proven facts of the case, as to justify us in setting aside this verdict.

We cannot enter a judgment non obstante veredicto, in favor of the defendant, because binding instructions in its favor, for the reasons already stated, could not be given at the trial.

Now, to wit, April 27, 1914: The motions for a new trial and for judgment non obstante veredicto are overruled and refused.

Other facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $3,970.20 and judgment thereon.

The court dismissed defendant's motion for judgment n. o. v. Defendant appealed.

*Errors assigned* were in refusing motion for judgment n. o. v., the charge of the court and various answers to points.

*Richard E. Cochran*, with him *George S. Schmidt*, for appellant.

*J. S. Black*, for appellee.

OPINION BY MR. JUSTICE BROWN, July 1, 1914:

Ivan R. Hartman, the appellee, was employed as a brakeman by the Western Maryland Railway Company, engaged in interstate commerce. On November 7, 1912, he went to Gettysburg, this State, under orders to report

for duty on a freight train, which left that place before
daybreak on the following morning for Port Coving-
ton, Maryland.   The train was a long one, drawn by two
locomotives.   Before it left Gettysburg the appellee and
another brakeman went into the caboose with the con-
sent of the conductor, who told them they would have
to leave it and go forward before the train reached
Hanover.   As it approached the town of New Oxford,
not far from Hanover, shortly before three o'clock in the
morning, the appellee and the other brakeman left the
caboose and went forward, crossing over the tops of box
cars.   While doing so the appellee fell or was jolted
from the top of one of them, and, falling between two
of them, was so severely injured that it was necessary
to amputate his right foot.   In this action, brought
under the Act of Congress of April 22, 1908, he bases his
right to recover on what he alleges was the negligence of
the engineer of the train in running it at an excessive
rate of speed and in suddenly putting on the brakes
while it was passing around a curve, causing the jolt
or jar which threw him to the ground.   The case went
to the jury on these two allegations of negligence, and
a verdict was returned for the plaintiff, upon which
judgment was duly entered.

One of the rules of the defendant company, offered in
evidence by the plaintiff, fixed the maximum speed of a
freight train such as he was on at twenty miles an hour,
and in the general notice to all of the company's em-
ployees, also offered in evidence, there is the following:
"Obedience to the rules is essential to the safety of
passengers and employees and the protection of prop-
erty."   The plaintiff testified that the train was running
at the rate of twenty-five or thirty miles an hour when it
reached a curve, at which point the engineer, without
any warning, suddenly put on the brakes and then in-
stantly released them, so jarring the train that he was
jolted from it.   This testimony was sufficient to send
the case to the jury under the federal statute, for, if

believed, it showed the negligent operation of the train
by the engineer, in violation of one of the express rules
of the company, to have been the direct cause of the in-
juries sustained by the appellee.  It is, however, earnest-
ly insisted by learned counsel for appellant that the ap-
pellee had not shown himself qualified to testify to the
rate of the train's speed, and that even if he had done
so, in view of the positive contradiction of his testimony
by a number of competent witnesses called by the de-
fendant, who testified advisedly as to the rate of speed
at which the train was running, a verdict ought to have
been directed for the defendant.  Why this could not
have been done appears in the brief, but clear, opinion
of the learned president judge of the court below, de-
nying a new trial and overruling the motion for judg-
ment non obstante veredicto, and on that opinion the
second, third and fourth assignments are dismissed.

The first assignment complains of the failure of the
court to instruct the jury as to the weight to be given to
the uncorroborated testimony of the plaintiff, in view of
its positive contradiction by all of the witnesses called
by the defendant.  This assignment does not call for a
reversal of the judgment.  In his charge to the jury the
learned trial judge specifically referred to the fact that
the testimony of the plaintiff as to the rate of the train's
speed was but an expression of his own individual judg-
ment, in which he was not corroborated by any one; and
as against his testimony the attention of the jury was
called to that of the two engineers, the fireman and the
other brakeman, that the rate of speed was less than
nine miles an hour.  If the appellant wished for fuller
instructions as to the weight to be given to the testimony
of the plaintiff, it should have asked for them.

The second question suggested by the appellant in the
statement of questions involved is the plaintiff's assump-
tion of the risk of being jolted from the top of a car
while the train was in motion.  We do not regard this
as a question before us, in view of the following answer

by the court to the appellant's first point: "The plaintiff having accepted the hazardous and dangerous employment of a brakeman on the defendant's freight train, he is at law held to have assumed all the obvious and open risks of his employment in the ordinary operation of the train on which he worked as brakeman, and also of such risks as to which he had been informed. Among such risk of injury would be those ordinarily and obviously existing where a brakeman in the discharge of his usual duties as such, is required to walk over the tops of moving cars."

The four assignments of error are overruled and the judgment is affirmed.